# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

OSTEOSTRONG FRANCHISING, LLC,

    Plaintiff,

    v.                                                                       Civ. No. 18-1184 WJ/JFR

ROLAND RICHTER, SHEILA NIXON,
JDAP, INC. AND DANCINGBONES, LLC,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' RULE 41(d) MOTION FOR COSTS AND FEES
## AND FOR STAY OF PROCEEDINGS

THIS MATTER comes before the Court upon Defendants' Rule 41(d) Motion for Costs and Fees and for Stay of Proceedings, filed on February 22, 2019 by Defendants Richter, Nixon, JDAP, Inc. ("JDAP") and Dancingbones LLC ("Dancingbones") **(Doc. 12)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' Motion is not well-taken and, therefore, is denied.

## BACKGROUND

This is a trademark infringement case. According to the complaint and Joint Status Report (Doc. 21), Defendants Richter and Nixon ("Defendants") became interested in opening an OsteoStrong franchise in Santa Fe. Plaintiff, in preparing Nixon and Richter to open an OsteoStrong location, disclosed confidential information and trade secrets about OsteoStrong. Plaintiff decided not to open a Santa Fe OsteoStrong location in order to allow Defendants to open their own OsteoStrong location there instead. Defendants eventually changed their mind about purchasing an OsteoStrong franchise and instead opened a competing business in Santa Fe under

the name DancingBones, offering virtually the same services as OsteoStrong and using the same equipment, layout and confidential trade secret information detailing how to successfully operate an OsteoStrong franchise. Defendants also advertised and held themselves out as OsteoStrong on the Internet. Defendants Nixon and Richter also own and operate the corporation JDAP, which operates as Joe's Diner and sent out Joe's Diner newsletters which published OsteoStrong's trademark without permission or authorization. The newsletters were circulated on the Internet over the course of several months in an effort to generate business and advertise services that ultimately inured for the benefit of DancingBones.

Defendants maintain that they engaged in good-faith preparations to open the Santa Fe OsteoStrong location, and signed a non-disclosure agreement as part of their discussion. However, repeated communications failures by Plaintiff and its developers left Defendants with serious concerns about proceeding with the project. Defendants deny that they were ever provided any confidential or trade secret information. They also claim that OsteoStrong made substantive changes to the terms the parties had negotiated and under which the Defendants thought they would become franchisees. Defendants deny using any of the information they obtained from OsteoStrong or their developer and also deny using OsteoStrong's mark without permission.

The Complaint and Application for Injunctive Relief asserts five claims for relief:

Count 1 - Misappropriation (Defend Trade Secrets Act of 2016, or "DTSA");

Count 2 – Misappropriation (New Mexico Uniform Trade Secrets Act ("NMUTSA");

Count 3 – Breach of Contract;

Count 4 – Unfair Competition, 15 U.S.C. §1125

Count 5 – Trademark Infringement, 15 U.S.C. §1114(1)

In addition, Plaintiff seeks to enjoin Defendants from using or disclosing OsteoStrong's trade secrets and confidential information.

**DISCUSSION**

Defendants seek costs of a previously dismissed action under Fed.R.Civ.P. 41(d). In December 2017, Plaintiff filed an almost identical lawsuit in the Southern District of Texas, Houston Division ("Texas case") alleging identical claims against the same Defendants. Doc. 12-1. In response to the complaint in the Texas case, Defendants filed a Motion to Dismiss based on lack of personal jurisdiction. Plaintiff did not respond to the motion but instead voluntarily dismissed the Texas case under Rule 41(a)(1)(A)(i) on April 30, 2018. Doc. 12-3 (Notice of Vol. Dism. Without Prej.). Plaintiff has filed the same lawsuit here in the District of New Mexico.

Rule 41(d) states:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied."

Fed. R. Civ. P. 41(d). The purpose of the rule is to "prevent the maintenance of vexatious law suits and to secure, where such suits are shown to have been brought repetitively, payment of costs for prior instances of such vexatious conduct." *Meredith v. Stovall*, 216 F.3d 1087 (10th Cir. 2000) (finding no abuse of discretion in imposition of costs under Rule 41(d) where plaintiff filed frivolous lawsuit after first one was dismissed for lack of subject matter jurisdiction); *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000) (awarding fees as part of costs advances purpose of Rule 41(d), which is to deter forum shopping and vexatious litigation; *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir.1992) (same); *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir.2000) (stating that 41(d) is "intended to prevent attempts to gain any tactical advantage by dismissing and re-filing the suit"); *Andrews v. Am.'s Living Centers, LLC*, 827 F.3d

3

306, 309 (4th Cir. 2016) (Rule 41(d)'s purpose is clear and undisputed: "to serve as a deterrent to forum shopping and vexatious litigation").

Defendants ask the Court to order Plaintiff to pay the costs and fees incurred by them in defending against the Texas action based on lack of personal jurisdiction and further ask the Court to stay proceedings in this matter until Plaintiff has complied with the Court's order awarding the costs and fees. Defendants contend that imposition of costs under Rule 41 is warranted because: (1) Plaintiff provided no valid reason for filing the Texas case in the first place, particularly where the facts clearly indicated a lack of personal jurisdiction; and (2) the subsequent case filed in this District contains identical allegations and claims, except that the Texas misappropriation state law claim has been replaced by a New Mexico misappropriation state law claim.

Defendants claim that the plain language of Rule 41(d) provides this Court with a sufficient basis for granting their motion, based solely on the dismissal of the Texas case and the refiling of the action in this district. Plaintiff argues that absent a showing of vexatious intent, Rule 41(d) does not apply; however, it is not clear whether such a showing of intent is required. *Cmp. Oteng v. Golden Star Res., Ltd.*, 615 F. Supp. 2d 1228, 1240 (D. Colo. 2009) (no showing of bad faith is required before costs may be imposed on the plaintiff under Rule 41(d), but the plaintiff's motive in dismissing the prior action may be taken into account) and *Esquivel v. Arau,* 913 F.Supp. 1382, 1388 (C.D.Cal.1996) (quoting *Simeone v. First Bank Nat'l Ass'n,* 971 F.2d 103, 108 (8th Cir.1992) ("nothing in the language of Rule 41(d) . . . suggests that a defendant must show 'bad faith' before a district court can order payment of costs incurred in a voluntarily dismissed previous action") with *Meredith,* 216 F.3d at *1 (purpose of the rule "is to prevent the maintenance of vexatious law suits and to secure, where such suits are shown to have been brought repetitively, payment of costs for prior instances of such **vexatious conduct**") (emphasis added) and *Sewell v. Wal-Mart Stores,*

4

*Inc.*, 137 F.R.D. 28, 29 (D. Kan. 1991) (denying motion for Rule 41(d) costs where court found "no evidence of vexatious intent, or that plaintiff was attempting to gain any tactical advantage by dismissing and refiling this suit").

Even assuming that imposition of Rule 41(d) costs does not require a showing of vexatious conduct, the Court finds that imposition of costs under Rule 41(d) is not warranted for several reasons:

(1) Defendants contend that there was no justification for the filing of the Texas case, and that Plaintiff has provided no reason either for its filing in the first place or for its voluntary dismissal. They argue that the Court in the Texas case plainly did not have personal jurisdiction because Plaintiff is a Texas corporation, but no Defendant is a Texas resident or corporation; and that all alleged actions of Defendants took place in New Mexico. However, in the response, Plaintiff explains that it had a good-faith basis to believe the Texas court had personal jurisdiction over Defendants, referencing communications and "invoices" exchanged by the parties as well as meetings to discuss investing in OsteoStrong. Doc. 17 at 2. Plaintiff's reasons are not exactly unassailable,[1] but the Court does not intend to analyze a jurisdictional issue that is not properly before it and will accept that Plaintiff had a colorable claim when filing the Texas case.

(2) Plaintiff's voluntary dismissal of the Texas case appears to have been prompted by Defendants, rather than by Plaintiff's desire to forum-shop, and the Court considers this a critical finding. On April 27, 2018, Mr. Samuel Wolf, Esq. (counsel for Defendants) sent a letter to Mr. Patel and Mr. Agbol of the Steele Law Group (counsel for Plaintiff) in which he urged them to

---

[1] *See, e.g., Caba Ltd. Liability Co. v. Mustang Software, Inc*., 127 N.M. 556, 562, 984 P.2d 803, 809 (Ct.App. N.M. 1999) (exchanges of telephone calls and correspondence are not enough to support jurisdiction); *DeVenzeio v. Rucker, Clarkson & McCashin*,, 121 N.M. 807, 809-10, 918 P.2d 723, 725-26 (Ct.App. 1996) (Ordinarily, the use of mail and telephone services to contact a New Mexico resident from out of state is insufficient to satisfy the "purposeful availment" prong of a minimum-contacts analysis).

5

consider "moving the matter to New Mexico with your clients and co-counsel." Doc. 17-3.[2] In the letter, Mr. Wolf mentioned previous discussions where Plaintiff's counsel had recognized the likelihood that Defendants' jurisdictional motion would be granted. He pointed out the similarities between the claims alleged in the Texas case and a state court case already being litigated in the First Judicial District Court in Santa Fe, New Mexico ("the Santa Fe case") against non-parties Sean and Charla Simpson ("the Simpsons") who were OsteoStrong's regional developers. Based on the existence of the Santa Fe case, Mr. Wolf suggested joinder of parties under New Mexico Rule 19 in order to address all the related parties and claims "in a single matter." *Id.* at 1. Mr. Wolf also sent Plaintiff's counsel an e-mail acknowledging that he was amenable either to having the Court in the Texas case grant the motion to dismiss on jurisdictional grounds, or to Plaintiff's refiling the case in New Mexico state court, as long as the parties could "avoid any future claims either of waiver or any future filings in Texas related to these issues." Doc. 12-4. On May 7, 2018, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice under Rule 41(a)(1)(A)(i) and on December 17, 2018, then filed the same lawsuit here in the District of New Mexico.

Defendants cannot claim either surprise or disapproval regarding Plaintiff's voluntary dismissal of the Texas case. Defendants note in the reply that their objective was to persuade Plaintiff to join their parties and claims to the pending Santa Fe case rather than file a separate federal lawsuit in the District of New Mexico. However, even a favorable disposition of Defendants' jurisdictional motion by the Southern District of Texas in the Texas case could not have guaranteed that Plaintiff would subsequently move to join the pending Santa Fe case nor is there any indication that Plaintiff's counsel had agreed to do so. In fact, there was little motivation

---

[2] The Steele Law Group currently represents Plaintiff in this federal lawsuit as well.

for Plaintiff to join the Santa Fe case, regardless of how convenient it might have been for Defendants.

In the April 27, 2018 letter to Plaintiff's counsel, Mr. Wolf stated that the Simpsons were asserting claims in the Santa Fe case "that are closely related to those asserted by your clients in the suit filed in Texas." Doc. 17-3 at 1. Defendants had filed the Santa Fe case asserting unfair trade practice claims against the Simpsons after the Simpsons (who are non-parties in both the Texas case and this one) threatened to sue them. *See* Doc. 51 (Court Minutes). The Simpsons counter-sued and the case subsequently settled. *Id.* Thus, Mr. Wolf was suggesting that Plaintiff join the Simpsons' countersuit. The Court will not second-guess whether joinder in the Santa Fe case was feasible—much less appropriate—for Plaintiff, but Defendants' disappointment with Plaintiff's decision not to consolidate its claims with the Simpsons does not constitute grounds for imposition of costs under Rule 41(d).

(3) Finally, Rule 41(d) costs are not warranted because Plaintiff dismissed the Texas case at an early stage in the litigation (Defendant was awaiting a ruling on its jurisdictional motion to dismiss). This case is also is in its initial stages. *Cmp. Garza v. Citigroup Inc.*, 311 F.R.D. 111, 114–15 (D.Del. 2015) ("*Garza I*")subsequently aff'd, 881 F.3d 277 (3d Cir. 2018) (*"Garza II"*) ( finding award under Rule 41 appropriate where second lawsuit was essentially the same and did not add new allegations, and where defendant suffered "needless expenditures" in the form of producing **detailed and comprehensive motion to dismiss** in the earlier case only to see plaintiff refile same claims in another court) (emphasis added); and *Atkinson v. Forest Research Institute, Inc.*, 2015 WL 790220, at *6 (D.N.J. Feb. 25, 2015) (declining to award costs under Rule 41(d) where action had not progressed far beyond initial pleadings, discovery had been minimal and any materials that had been provided would likely be relevant in subsequent litigation).

7

**THEREFORE,**

**IT IS ORDERED** that Court Defendants' Rule 41(d) Motion for Costs and Fees and for Stay of Proceedings **(Doc. 12)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE