# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

OSTEOSTRONG FRANCHISING, LLC,

       Plaintiff,

vs.                                                            Case No. 1:18-cv-1184-KWR-JFR

ROLAND RICHTER, SHEILA NIXON,
JDAP, INC., and DANCINGBONES
LLC,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment on Plaintiff OsteoStrong Franchising, LLC's (OsteoStrong) claims, filed on March 6, 2020 (**Doc. 159**).  Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is **GRANTED.**

## BACKGROUND

This case arises from a potential franchising relationship between the parties that soured, after which Defendants ultimately opened a competing business.  OsteoStrong alleges, among other things, that Defendants (1) misappropriated proprietary information and trade secrets to launch their own business (2) advertised using OsteoStrong's mark and manipulated internet searches such that Defendants' business address appeared in place of OsteoStrong's.

OsteoStrong filed this case alleging violations of both federal and New Mexico state law. OsteoStrong's Complaint asserts the following claims:

Count I:  Misappropriation (Pursuant to the Defend Trade Secrets Act of 2016)

Count II:  Misappropriation (Under the New Mexico Uniform Trade Secrets Act)

Count III: Breach of Contract

Count IV: Unfair Competition (15 U.S.C. 1125); and

Count V: Trademark Infringement (15 U.S.C. 1114 (1)).

Defendants moved for summary judgment on all claims asserted by OsteoStrong. **Doc. 159.**

## LEGAL STANDARD

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996).  To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).).  A court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  A court cannot weigh the evidence

2

and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and thus, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

**UNDISPUTED FACTS[1]**

OsteoStrong's Response to Defendants' Motion for Summary Judgment is not in compliance with Local Rule 56.1(b) which mandates the following:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. *Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.* The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies. (emphasis added).

Factual assertions not specifically controverted or disputed are deemed admitted.  To the extent a party does not cite to the record to support a fact or dispute a fact, the Court disregards that factual assertion or dispute.  Fed. R. Civ. P. 56(c)(1)(A); D.N.M.LR-Civ. 56-1(b) ("All material facts set forth…will be deemed undisputed unless specifically controverted."); Fed. R. Civ. P. 56(e)(2). The court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56 (c)(3).

Defendants' Motion for Summary Judgement provides 85 material facts (DMF). OsteoStrong's Response does not contain a single, numbered fact and does not specifically refer

---

[1] References to supporting exhibits are included in the briefs and for ease of reading, are omitted here.

to the record at all in reference to Defendants' cited material facts. Rather, OsteoStrong merely states that "The facts as recited by Defendants are disputed." Doc. 166 at 2. Given OsteoStrong's failure to supply an adequate response brief, the Court accepts Defendants' facts properly supported by the record as true. *See Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008).[2] The Court then views the facts in the light most favorable to the plaintiff, as the nonmovant. *Id.*

**<u>Defendants' Initial Interaction with OsteoStrong</u>**

Around December 22, 2015, Defendant Sheila Nixon (Nixon) visited an OsteoStrong Albuquerque location as a customer for a free introductory session. During her introductory session she was informed of a business opportunity, after which she began communicating with OsteoStrong's regional developers, Sean and Charla Simpson (the Simpsons), regarding potential franchising. Following their initial discussion, Nixon was asked to execute a non-disclosure agreement (NDA) in which she agreed not to share confidential information disclosed to her. Nixon was particularly interested in OsteoStrong's BioDensity equipment, used for "osteogenic loading."[3] BioDensity is manufactured and sold by Performance Health Systems, an unrelated third-party entity.

Nixon and her husband, Defendant Roland Richter (Richter), owned another business, Joe's Dining, a Santa Fe restaurant. In May 2016, Nixon wrote in the restaurant newsletter[4] about the process of osteogenic loading, stating "I've been so impressed with this biodensity technology that I've decided to bring an OsteoStrong center to Santa Feans. I will have more information

---

[2] OsteoStrong cites to the record a few times in its Response Brief, but the Court finds these few instances insufficient to overcome summary judgment.
[3] Osteogenic loading is "a rehabilitative medicine method with a goal of improving bone density and prevent bone fracture. This can be seen as a brief, intensive resistance exercise for bone health." <https://en.wikipedia.org/wiki/Osteogenic_loading> Date Accessed: 7/24/20.
[4] The newsletter is published in paper format and archived electronically on the restaurant's website.

soon." Subsequently, in June 2016, Nixon issued a statement in the newsletter that, "Sheila [Nixon] will be following her heart (and her head!) by opening a wellness center, OsteoStrong Santa Fe."

During the course of their business discussions, OsteoStrong informed Nixon that it would no longer be using BioDensity equipment, but would switch to its own product, called Spectrum, despite the fact that it was prohibited from marketing or selling Spectrum equipment at that time by a June 15, 2016 restraining order, effective until August 5, 2016.  Eventually, Nixon became frustrated with OsteoStrong's slow process and response times, which she expressed to the Simpsons via email on June 16, 2016.  The following day, Nixon was informed that the process would be moving more smoothly in a forwarded email from OsteoStrong's CEO, Kyle Zagrodsky. Despite the change from BioDensity to Spectrum machinery, Defendants submitted a franchise application on July 5, 2016. Ultimately, OsteoStrong rejected Defendants' application for their failure to attest to a merger clause, which Defendants declined to sign due to oral representations from the company's representatives that did not align with the information provided in the application.

### **Defendants Open a Competing Business**

Approximately six months after OsteoStrong rejected Defendants' application, Defendants opened DancingBones, LLC (DancingBones), an independent business in Santa Fe utilizing BioDensity equipment purchased from Performance Health Systems. Defendants selected the location based on its proximity to their restaurant. There was no OsteoStrong location in Santa Fe at the time, until Dr. Lawrence Canfield opened one in June 2018. Dr. Canfield was aware of DancingBones when he opened his facility. Following the opening of DancingBones, Defendants were involved in litigation with the Simpsons, in which the Simpsons advanced claims for misappropriation of twelve categories of confidential, proprietary, and trade secret information,

5

the same twelve categories of misappropriation asserted by OsteoStrong in the instant action[5]. The

twelve categories include:

1. Confidential scripts to use when talking to prospects and members and the psychology behind the scripts;
2. Confidential pro forma for the proposed investment opportunity either in Santa Fe or Albuquerque which detailed every form of cash inflow and outflow based on previous operations of OsteoStrong facilities, which showed the exact cost of investment and an accurate method for calculating return on investment;
3. A confidential Operating Agreement, Membership Restriction and Redemption Agreement, and Member Subscription Agreement form;
4. Assistance in prospecting events for lead generation in Santa Fe, including confidential strategies on how to successfully run these events
5. Methodologies for site selection, demographics of potential clientele based on confidential numbers at OsteoStrong's other facilities;
6. Visits by the OsteoStrong Regional Developer team with Defendants to evaluate two potential spaces and discuss the importance of branding, signage, parking lot considerations, etc.;
7. A confidential list of every item necessary to begin operations, including an analysis of inventory amount;
8. A confidential cost breakdown for internal pop-up signage, external signage, etc.;
9. Information on how to obtain business insurance at a discounted rate and classification of the business;
10. Competitive pricing information;
11. Billing information and billing practices; and
12. Scheduling strategies.

The remainder of Defendants' facts relate predominately to supporting testimony within

the record. The Court accepts those facts supported by the record as true given OsteoStrong's

failure to adhere to local rules, with the exception of DMF ¶¶ 63 and 81 because Defendants did

not attach the relevant portions of the exhibits cited to in support.

## DISCUSSION

### I.   <u>OsteoStrong Fails to Substantiate Counts 1 and 2 regarding Trade Secret Misappropriation</u>

---

[5] The Simpson litigation was resolved by settlement on October 24, 2018.

OsteoStrong first claims that, pursuant to the Defend Trade Secrets Act of 2016 (DTSA), Defendants have misappropriated confidential and proprietary information, as well as trade secrets, by feigning interest in an OsteoStrong franchise for the purpose of using this information to open a competing business. OsteoStrong further posits that the NDA Defendants signed is indicative of OsteoStrong's reasonable steps to maintain the confidentiality of this information.  Defendants argue that OsteoStrong's claim fails because it was unable to establish that Defendants ever received or used confidential information and that OsteoStrong has not provided with specificity what trade secrets were purportedly misappropriated by Defendants. ("OsteoStrong's testimony uniformly establishes that it has no documentary evidence to support its allegations [] and that it knows virtually nothing about the proprietary information or trade secrets it claims were stolen.") *See* Doc. 159 at 18-20.  Defendants apply these arguments to OsteoStrong's claims under Counts 1, 2 and 3.   Having reviewed the law and the relevant facts, the Court agrees with Defendants.

### **The DTSA**

The DTSA provides the following definition of a trade secret:

**(3)** the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>  **(A)** the owner thereof has taken reasonable measures to keep such information secret; and
>  **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information…

18 U.S.C.A. § 1839.

OsteoStrong also claims entitlement to damages for misappropriation of trade secrets under the New Mexico Uniform Trade Secrets Act (NMUTSA).  Both parties indicate that the DTSA

definition of a trade secret is similar in nature to the Uniform Trade Secrets Act (UTSA), which has been adopted with some modification in New Mexico. *See Array Techs., Inc. v. Mitchell*, 305 F. Supp. 3d 1256, 1275 (D.N.M. 2018).

The NMUSTA defines a trade secret as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that:
(1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

NMSA 1978 § 57-3A-2.

The statute also describes misappropriation:

"[M]isappropriation" means:
(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) disclosure of use of a trade secret of another without express or implied consent by a person who:
 (a) used improper means to acquire knowledge of the trade secret; or
 (b) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: 1) derived from or through a person who had utilized improper means to acquire it; 2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or 3) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
 (c) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake;

*Id*. at § 57-3A-2(B).

### **OsteoStrong Fails to Describe Trade Secrets with Sufficient Particularity**

The Court of Appeals of New Mexico has stated that the NMUTSA definition of a trade secret "capture[s] the essential elements of a trade secret: confidentiality and value." *Pincheira v. Allstate Ins. Co.,* 2007–NMCA–094, ¶ 55, 142 N.M. 283, 164 P.3d 982, *aff'd in part on other*

*grounds, rev'd in part on other grounds,* 2008–NMSC–049, 142 N.M. 601, 190 P.3d 322. In

*Pinchiera*, the Court looked to the six factors listed in the Restatement (First) of Law of Torts to

determine whether information is a trade secret:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the owner] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended ... in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc.*, 2014 WL 459004, at *84-85 (citing *Pincheira v. Allstate Ins. Co.,* 2007–NMCA–094, ¶ 31, 142 N.M. 283, 164 P.3d 982 (quoting *Restatement (First) of Law of Torts* § 757 cmt. b)).

"General knowledge or skills, or recollections of client preferences, and information that

can be obtained in a specialized directory do not constitute trade secrets." *Id*. at *85 (citing *Rapid*

*Temps, Inc. v. Lamon,* 2008–NMCA–122, ¶¶ 22–23, 144 N.M. 804, 192 P.3d 799 (holding that

the database of names constituted a trade secret, because "the information contained in the database

goes beyond [the defendant]'s general skills and knowledge, her recollection of client preferences,

and information that one could easily obtain by consulting a phone directory")); *See also Bradbury*

*Co., Inc. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1221-1222 (D. Kan. 2006) ("The existence of

a trade secret is a question for the trier of fact; however, the plaintiff must produce some evidence

showing that the information alleged to be a trade secret meets the definition of a trade secret. This

burden is not met by general allegations; rather, it must be met by describing 'the subject matter

of their trade secrets in sufficient detail to establish each element of a trade secret.' Plaintiff has

the burden … to define its trade secrets with the precision and particularity necessary to separate

it from the general skill and knowledge possessed by others.") (internal citations omitted).

Additionally, "New Mexico law does [not] only require that [] a trade secret has value, but that it derives that value from its being not generally known to other persons and not easily ascertained by other people. *See* N.M.S.A.1978, § 57–3A–2(D)(1)." *Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc.*, 2014 WL 459004, at *86.

Here, OsteoStrong was only able to proffer a general description of the alleged trade secrets:

> OsteoStrong provided Defendants with confidential scripts, how to educate a client, the psychology behind communications with the client, aspects to reduce the amount of attrition, use of equipment, information directly from the OsteoStrong manual, training to the Defendants and their associate, scheduling, assisting Defendants with site selections, demographics, use of proprietary software, and detailed costs on running the franchise. DMF ¶ 61.

Moreover, with respect to the alleged trade secrets, OsteoStrong was unable to produce any actual evidence of confidential or secret information in any format, such as communications, images, and audio or video recordings that it contended Defendants misappropriated, stating *inter alia* "The specific scripts provided orally to Defendants are unknown at this time as OsteoStrong's Regional Developers have not been cooperative; Plaintiff does not have possession or control of the items as they were not provided to Plaintiff; No responsive documents in our possession custody or control…" DMF ¶¶ 64-65; *See* Doc. 159 Ex. 12, Defendants' Request for Production No. 10.

OsteoStrong has not demonstrated how much of its asserted categories of proprietary information, such as: use of equipment; billing operations; knowledge of insurance policies to obtain favorable rates; and using a scheduling strategy of deliberately operating fewer hours to create a sense of high demand amount to trade secrets or are substantially anything more than common knowledge. *Insure New Mexico, LLC v. McGonigle*, 2000-NMCA-018, ¶ 18, 128 N.M. 611 ("General skills and knowledge do not rise to the level of trade secrets.") Nor has OsteoStrong adequately set forth how these "strategies" "derive[] independent economic value, actual or

potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use." NMSA 1978 § 57-3A-2(1).

When pressed at deposition for information to support OsteoStrong's claims, OsteoStrong's representative, Matthew Zagrodzky[6], referenced the Complaint and Ms. Simpson's affidavit, which the Court finds unsupported by her deposition[7]; repeatedly stated that he had no information with respect to the various categories of proprietary information Defendants allegedly misappropriated; and relied on the mere fact that Defendants had opened a competing business as evidence of misappropriation. DMF ¶¶ 17-77. Notably, Mr. Simpson testified that he and his wife had not conveyed the written scripts to Defendants but provided oral instruction only (DMF ¶¶ 21-22); that the "main" proprietary item at issue, a pro forma spreadsheet showing business projections such as cash flow and expenses, was never provided to Defendants and only shown to them on his computer, and was much too big to fit on one screen (DMF ¶¶ 25-27).

With respect to the third item on the list of trade secrets, "A confidential Operating Agreement, Membership Restriction and Redemption Agreement, and Member Subscription Agreement form," Mr. Simpson stated that he did not know whether any of these documents were any different than those obtainable online; that he could not recall whether he had designated these items as confidential when shared with other entities; and that he had previously sold these documents for around $3,000. (DMF ¶¶ 29-30). The Court agrees with Defendants that this militates towards finding that OsteoStrong did not take reasonable steps to ensure the safety of purportedly proprietary information in accordance with the NMUTSA. *See* NMSA 1978 § 57-3A-

---

[6] Matthew. Zagrodzky is the brother of CEO Kyle Zagrodzky and OsteoStrong's general counsel and was designated to testify by OsteoStrong in response to a Notice of Deposition under Fed.R.Civ.P. 30(b)(6).
[7] Asked what sets apart her business strategies apart from others who have created a successful business, Ms. Simpson testified that she did not know. Doc. 159-14 Ex. 14, 53:25-54:1-13.

2 (D)(2). Additionally, DancingBones is a single member LLC without investors, does not have an operating agreement, and Nixon testified that she did use any documents obtained from the Simpsons or OsteoStrong. DMF 32.  Matthew Zagrodsky could not supply anything evincing that Defendants used these documents aside from the fact that Defendants opened DancingBones (DMF 34), nor could he explain what the documents at issue actually were. DMF 33.

Separately, Dr. Canfield, the proprietor of an OsteoStrong Santa Fe franchise, testified about the training he underwent, which OsteoStrong designated as a trade secret in its Response to Defendants' Interrogatories. While not dispositive, as his business was opened after DancingBones and therefore after Defendants' involvement with OsteoStrong procedures, Dr. Canfield stated that the training was composed of both confidential and nonconfidential information, but that the proprietary data was only accessible via a secure server on an "OsteoStrong University" web portal, and that only non-confidential information and YouTube links were sent via email.  DMF ¶ 77; Doc. 159-8 Ex. 8, 35:6-25–36:1-12. He testified that the scripts were used to speak to current and prospective customers, and that none of them were informed that the information was confidential or secret. DMF 23.

Compounding OsteoStrong's failure to substantiate its claims or meet its burden to oppose summary judgment, the Court notes that in its Response contesting Defendants' arguments with respect to trade secrets and misappropriation, OsteoStrong does not cite to a single case in support of any of its assertions. Rather, it provides the definitions of trade secrets under the DTSA and UTSA and then proffers a series of facts without citation to the record which it alleges supports its position that summary judgment must be denied. Doc. 166 at 6-7. In light of the evidence set forth by Defendants and OsteoStrong's evidentiary shortcomings, the Court concludes that OsteoStrong has not established a cognizable argument; has not set forth genuine disputes of material fact;

failed to demonstrate with sufficient specificity that it was in possession of viable trade secrets within the meaning of the DTSA and NMUTSA, or convincingly shown that Defendants used or misappropriated trade secrets. Accordingly, the Court grants summary judgment in favor of Defendants on Counts 1 and 2.

## II.    __OsteoStrong's Breach of Contract Claim (Count 3)__

The Court similarly rejects OsteoStrong's claim for breach of contract for lack of evidence. OsteoStrong does not appear to directly address Defendants' argument on this issue in its Response Brief.

### __The Law Regarding Breach of Contract__

"A cause of action for breach of contract requires (1) the formation of a contract and (2) the breach of a contractual promise. *See Nance v. L.J. Dolloff Associates, Inc.*, 138 N.M. 851, 856, 126 P.3d 1215, 1220 (N.M. Ct. App. 2005)." *MEI Techs., Inc. v. Detector Networks Int'l, LLC*, 2009 WL 10665560, at *3 (D.N.M. July 6, 2009).

In its Complaint, OsteoStrong avers that Defendants entered into a binding agreement with it, and that OsteoStrong performed its obligation by permitting Defendants temporary use of trade secrets in the process of "evaluating a business relationship with OsteoStrong." Complaint ¶ 43. OsteoStrong posits that Defendants breached the contract by, *inter alia*, misappropriating OsteoStrong's confidential information and trade secrets to open a competing business and to solicit OsteoStrong's "current and prospective clients." *Id*.

Defendants effectively argue that since OsteoStrong's breach of contract claim relies solely on the purported existence and misappropriation of trade secrets, and because it cannot demonstrate that any trade secrets are actually at issue, or that trade secrets and confidential information were disclosed to Defendants, it cannot show that any contract was breached.

Preliminarily, the Court notes that OsteoStrong does not adequately address Defendants' breach of contract argument, but rather focuses on Defendants' contentions relating generally to trade secret and confidential information. From what the Court can glean from OsteoStrong's response brief, it appears to rely upon the fact that Defendants executed two NDAs with non-compete provisions, on January 11 and March 24, 2016 respectively, as proof of a contract entered into and a breach. OsteoStrong seemingly rests its argument upon the same reasoning it advanced with respect to trade secrets and misappropriation, which the Court has rejected in the preceding section. As to the matter of breach of contract, the Court reaches the same conclusion for substantially the same reasons; namely, OsteoStrong has unsuccessfully demonstrated that Defendants received trade secrets, misappropriated confidential information, or that there are genuine disputes of material fact. Accordingly, Defendants' motion for summary judgment as to Count 3 is granted.

### III.     OsteoStrong's Claim of Unfair Competition 15 U.S.C. 1125 (Count 4) is Dismissed

OsteoStrong claims that Defendants have unfairly competed in violation of 15 U.S.C. 1125 through Defendants' advertisement of DancingBones, particularly when Defendants advertised that they were opening an OsteoStrong location in Santa Fe, allegedly using OsteoStrong's mark for their own purpose. OsteoStrong states that Defendants thereby "misappropriated OsteoStrong's goodwill for their own benefit" Complaint ¶ 45.  Defendants contend that OsteoStrong's unfair competition claim relies entirely on an illegal non-compete clause Defendants were required to sign in an NDA, when Nixon first visited the OsteoStrong Albuquerque location as a customer, because it restricts all competition without any geographic or temporal limitations. Specifically, Defendants refer to the NDA language which provides that "The Party agrees not to compete with OsteoStrong and will not work for, consult with another company, business, or individual that uses

14

the BioDensity equipment in the course of business, commerce, or charity." Doc. 159 Ex. 20 at ¶ 14.

### An NDA Agreement is Valid in New Mexico with Reasonable Geographic and Temporal Limitations

Pursuant to New Mexico law "Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful." NMSA 1978 § 57-1-1. The New Mexico Supreme Court has further provided that "It is well-settled that a restrictive covenant is valid if it is within reasonable limits of time and space..." *Bowen v. Carlsbad Ins. & Real Estate, Inc.*, 1986-NMSC-060, ¶ 4, 104 N.M. 514, 516. Likewise, the Tenth Circuit has noted that " 'A restraint as to time must be necessary in its full extent for the protection of some legitimate interest of the promisee, and it must not be unduly harsh and oppressive to the covenantor.' 54A Am.Jur.2d § 862 at 170." *Elec. Distributors, Inc. v. SFR, Inc.*, 166 F.3d 1074, 1085 (10th Cir. 1999).

In *Bowen*, the New Mexico Supreme Court found a non-compete agreement relating to purchase of an insurance business valid and reasonable where the purchaser required the seller to attest that "The Seller agrees not to compete, directly or indirectly, with the Buyer in the insurance and real estate business within a radius of 15 miles from Carlsbad, New Mexico, for a period of 15 years." *Id*. at ¶ 1, 104 N.M. 514, 515. The Court noted that whether a particular restraint is reasonable is determined on a case by case basis and is a matter of law for the courts to decide. *Id*. at ¶ 4, 104 N.M. 514, 516. The Court explained that "In determining reasonableness, courts consider such factors as the nature of the business, its location, the parties involved, the purchase price, and the main object of the restriction." *Id*. In that instance, the Court held that the restriction was reasonable in light of the seller's unique "inside knowledge about customers and policy

15

renewals" in Carlsbad, a small community, and that permitting him to solicit insurance policies would "destroy [the buyer's] goodwill." *Id*. at ¶ 7, 104 N.M. 514, 517.

Here, Nixon was required to sign an NDA upon her first visit, as a customer, to the OsteoStrong Albuquerque location. When she indicated an interest in a potential business opportunity, she was contacted by the Simpsons and asked to sign the NDA. DMF 2. The agreement does not include any temporal or geographic limitation.  DMF ¶ 84. The Court finds this blanket non-compete provision, required by the mere expression of interest, unreasonable.

### OsteoStrong Has Not Established a Genuine Dispute of Material Fact

The entirety of OsteoStrong's response contains the following: "Defendants' [sic] erroneously state that OsteoStrong's claim "relies entirely on a noncompete provision...." Defendants' Motion for Summary Judgment at 22. Defendants then spend several pages arguing against a claim not made. See OsteoStrong's Complaint at 13. Accordingly, Defendants' motion for summary judgment should be denied. *See* 15 U.S.C. § 1115 (unfair competition)." The Court is nonplussed by this statement and does not understand how this responds to Defendants' argument. Page 13, ¶ 45 of the Complaint contains OsteoStrong's substantive allegations with respect to Count 4 but confusingly asserts a violation of 15 U.S.C. § 1125 and not § 1115. OsteoStrong does not speak to the validity of its non-compete provision or provide anything further to the Court. Such threadbare arguments are insufficient to meet the burden to withstand summary judgment, thus, Defendants' motion for summary judgment as to Count 4 is granted.

IV. **There is no Genuine Dispute of Material Fact as to OsteoStrong's Trademark Infringement Claim (Count 5) against Defendants.**

OsteoStrong asserts a trademark infringement claim pursuant to 15 U.S.C. § 1114(1), stating that Defendants' use of OsteoStrong's mark has created "consumer confusion as to the

16

origin of the respective parties' services" and misappropriated OsteoStrong's goodwill for their own benefit. Complaint ¶¶49-53. Defendants move for summary judgment, arguing that OsteoStrong's claim is based solely upon Nixon's announced intent to open an OsteoStrong location in her restaurant's newsletter and that this conduct does not meet the requisite elements provided in the statute. Doc. 159 at 24-25. The Court agrees.

### The Law Regarding Trademark Infringement

15 U.S.C. § 1114(1) provides that a violation arises when any person who, without consent of the registrant:

> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection *(b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.* (emphasis added).

First, Defendants argue that the intent element of the statute has not been established, noting that Nixon circulated the announcements OsteoStrong complains of *prior to* signing the franchise agreement with OsteoStrong; that Defendants did in fact sign the franchise application after these announcement, evincing an intent to follow through with the business; and that, but for OsteoStrong's subsequent rejection of Defendants' application and OsteoStrong's failure to include material representations in the final agreement proffered to Defendants, they would have opened a location. Secondly, Defendants assert that OsteoStrong has failed to establish the

statutory element of confusion, when it claimed that certain internet search engines return results for "OsteoStrong Santa Fe" with phone numbers and addresses linked to DancingBones, causing consumer confusion and harm to OsteoStrong. Defendants specify two issues: that Nixon's newsletters precede opening of any location, and thus she did not have an address or phone number at the time and that OsteoStrong has not proffered any evidence that the erroneous search results were caused by or the responsibility of Defendants.

In response, OsteoStrong once again offers no legal support for its position, relying instead upon conclusory statements of fact absent appropriate citation to the record. For example, to support the premise that trademark infringement occurred, without appropriate citation to the record, OsteoStrong states that "The newsletters were circulated on the Internet over the course of several months in an effort to generate business and advertise services that ultimately inured for the benefit of DancingBones." Doc. 166 at 7.  It is well established that supposition, conjecture, and conclusory statements are insufficient to defeat a properly supported summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.") (internal quotations omitted).

There is one instance where OsteoStrong cites to the record, stating "[Defendants] advertised using the OsteoStrong mark but funneled the business into DancingBones. Even Nixon admitted in her deposition that she knew, at a minimum, multiple people were actually confused. (See Exhibit. N, Deposition of Charla Simpson)." The Court finds this inherently problematic. As an initial matter, OsteoStrong once again does not adhere to Local Rules, in this instance Rule 10.6, by failing to mark the relevant portion of Exhibit N for the Court's attention. It is not the

Court's responsibility "to conduct a fishing expedition of plaintiff's [exhibit] or any other record evidence in order to support the assertions made in [its] response." *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 Fed. Appx. 631, 635 (10th Cir. 2008). Moreover, even upon a review of that exhibit, Ms. Simpson's testimony contradicts OsteoStrong's assertion. When asked "Are you aware of anybody who has actually been confused about whether or not DancingBones was an OsteoStrong location?" Ms. Simpson responds, "I can't say if anybody has been confused about that, but I assume there might be," and further confirmed that she did not have any personal knowledge or evidence at that time of confusion. Doc. 166-13 Ex. N, 94:21-95:1-4.

In light of OsteoStrong's legal and evidentiary deficiencies, the Court concludes that OsteoStrong has not met its burden to demonstrate a genuine dispute of material fact with respect to Count 5 and has not set forth any evidence to support the premise that Defendants' conduct was committed with the requisite knowledge and intent, or caused confusion within the meaning of 15 U.S.C.A. § 1114. Therefore, Defendants' motion for summary judgment on Count 5 is granted.

## CONCLUSION

The Court finds that Defendants' well-supported facts warrant summary judgment on all of OsteoStrong's claims. OsteoStrong has not carried its burden to refute Defendants' arguments in favor of summary judgment. Accordingly, OsteoStrong's claims are dismissed in their entirety.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (**Doc. 159**) is **GRANTED.**

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE